IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORMAN H. SHATTUCK,

|  |  |
|---|---|
| Plaintiff, | CV-07-784-ST |
| v. | FINDINGS AND RECOMMENDATIONS |
| THE ALCOA RETIREMENT PLAN II, RULE IID, | |
| Defendant. | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Norman H. Shattuck ("Shattuck"), is a former employee of Reynolds Metals

Company ("Reynolds"). Shattuck originally filed this action in Multnomah County Circuit

Court, *Shattuck v. Reynolds Metals Company Pension Plan for Hourly Employees – 1996*, Case

No. 070201916, alleging that he has been denied early retirement benefits since October 2004

when he turned age 55. He claims that he is entitled to those benefits under the "55/40

Retirement Eligibility" provisions of the Reynolds Metals Company Pension Plan for Hourly

1 - FINDINGS AND RECOMMENDATIONS

Employees – Plan No. 002 ("the RMC Hourly Plan") and the successor plan and current

defendant, the Alcoa Retirement Plan II, Rule IID ("Alcoa Plan").[1]

Shattuck brings a single claim for violation of the Employee Retirement Income Security

Act ("ERISA"), 29 USC § 1132.  Defendant filed a Notice of Removal to this court on May 25,

2007.  The parties have filed cross-motions for summary judgment which present a single

question of law, namely whether Shattuck is eligible for "55/40 " retirement benefits.

For the reasons that follow, Shattuck's Motion for Summary Judgment (docket #16)

should be denied; defendant's Motion for Summary Judgment (docket #20) should be granted;

and judgment should be entered in favor of defendant.

## FACTUAL BACKGROUND

### I.  Shattuck's Employment with Reynolds and Lay Off After Plant Shutdown

Shattuck worked for Reynolds at its Troutdale, Oregon, facility.  D 482, 589.[2]  Reynolds

first employed Shattuck as a machinist in the maintenance department on August 10, 1981.

D 504, 576.  He later held the position of millwright.  D 504.  As a non-exempt employee,

Shattuck was eligible to participate in the Reynolds Metals Company Pension Plan for Hourly

Employees – Plan No. 002 ("RMC Hourly Plan"), an ERISA-governed plan providing various

types of pension benefits to eligible participants.  D 1-73.

Effective September 30, 2000, Reynolds shut down its entire Troutdale facility.  D 504,

597.  As a result, Shattuck was laid off from his employment with Reynolds.  D 504.  At that

---

[1]  Following oral argument on the pending motion and pursuant to defendant's stipulation, this court ordered the substitution of the Alcoa Plan as the named defendant and amended the case caption accordingly.  *See* Order (docket #28).

[2]  Citations to the administrative record (docket #15) are to document number(s) (D 1 through D 598).

time, Shattuck was age 50.9917 (50 years, 11 months, 27 days) and had accrued 59 quarters of

service.  D 482, 499.

## II.  <u>Merger with the Alcoa Plan</u>

Effective December 31, 2001, the RMC Hourly Plan was amended.  The effect of the

amendment was to merge the RMC Hourly Plan with the Alcoa Retirement Plan II, Rule IID

("Alcoa Plan").  D 73.  The Alcoa Plan was designated the surviving plan.  *Id.*  Under the terms

of the merger, the RMC Hourly Plan "ceased to exist and all assets and liabilities of the [RMC

Hourly] Plan with respect to the bargaining employees . . . were assumed by [the Alcoa Plan]

effective as of January 1, 2002."  D 222, 364.  Both the RMC Hourly Plan and the Alcoa Plan

are ERISA-governed plans providing various types of pension benefits to eligible participants.

In order to accommodate a change in the method of crediting service under the Alcoa

Plan as opposed to the RMC Hourly Plan following the merger, an additional quarter of service

was granted to all former Reynolds employees, including Shattuck, who were actively accruing

service at the time of the plan merger.  D 306, 501.

## III.  <u>Administrative Proceedings</u>

On January 24, 2005, Shattuck submitted a claim for "55/40" retirement benefits as

provided for in the RMC Hourly Plan.  D 483.  Shattuck's request was based on a provision of

the RMC Hourly Plan, which provides as follows:

> **55/40 Retirement Eligibility** – Any Employee who on or after the
> Effective Date of this Pension Plan shall have at least forty (40)
> calendar quarters but less than one hundred twenty (120) calendar
> quarters of service and shall have attained the age of 55 years but
> has not attained age 62 may retire, provided that at the time of
> retirement the Employee
> (a) has been laid off as a result of a permanent shutdown of a plant,
> department or substantial portion thereof, or

> (b) has been absent from work continuously because of layoff,
> sickness or accident for a period of three years, and in such an
> event shall be entitled to receive a pension upon retirement as
> though he or she had attained the age of 62 years as provided in
> Section III, paragraph (1) above but based only on the period of
> service to the date of retirement.

D 487 (RMC Hourly Plan, Section III (6)).

On February 1, 2005, the Alcoa Retirement Service Center issued a letter to Shattuck

denying his claim for benefits under the Plan, stating:

> Under your plan, a retirement type is determined by factors
> specific to a participant's data at the end of plan participation.
> Among other qualifications for a 55/40 retirement type, a
> participant must be at least 55 years old.  At the end of your plan
> participation (9/30/2002), you were 52.9984 years old and did not
> meet the age criteria for the 55/40 retirement type.  You did accrue
> two years of service while absent due to the closure of the plant;
> that service has been calculated into your deferred vested benefit.
> Under a deferred vested retirement type, you are not currently
> eligible for retirement.  Your earliest retirement date is age 60,
> 11/01/2009.

D 492.

On February 21, 2005, Shattuck submitted an appeal requesting reconsideration of the

denial of his January 24, 2005 request.  D 493.  On June 6, 2005, prior to receipt of a decision

concerning his February 21, 2005 appeal, Shattuck submitted an additional appeal letter.  D 494-

95.

On July 13, 2005, the Alcoa Retirement Service Center issued a second letter denying

Shattuck's February 21, 2005 appeal.  D 496.  A month later, on August 16, 2005, the Alcoa

Benefit Appeals Committee issued a letter denying Shattuck's June 6, 2005 appeal, again

informing Shattuck that he did not qualify for 55/40 retirement:

> You were laid off due to plant shutdown on September 30, 2000. At that time you had attained age 50.9917 (50 years, 11 mos, 27 days) with 59 quarters of service.  The RMC Hourly plan allowed for a 2 year (8 quarters) service grow and a 3 yr age grow to allow for a laid off employee to grow into a 55/40 retirement.  Since at the end of the grow period you were age 53.9917, you were not eligible for a 55/40 retirement but are considered to be a Deferred Vested Plan Participant.

D 499.

Having exhausted the internal review process, Shattuck filed this action.

## FINDINGS

The issue before this court is whether Shattuck is eligible for an early retirement benefit known as the "55/40 Retirement Eligibility."

## I.  Standard of Review

A claim denying benefits under 29 USC §1132(a)(1)(B) of ERISA is reviewed *de novo* by the court "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire and Rubber v. Brunch,* 489 US 101, 115 (1989); *Jordan v. Northrop Grumman Welfare Benefit Plan,* 370 F3d 869, 874 (9th Cir 2004); *Bekos v. Providence Health Plan*, 334 F Supp2d 1248, 1251 (D Or 2004).  If the plan confers discretionary authority on the administrator or fiduciary, then the court reviews the decision under an abuse of discretion standard of review.  *Id.*

Shattuck argues that a *de novo* standard of review applies to his claim because the RMC Hourly Plan did not grant discretionary authority to administer or interpret the plan.  However, the relevant policy is the one in effect on the date the claim for benefits is denied.  *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F3d 1154, 1160-61 (9th Cir 2001).  In this case, the RMC Hourly Plan merged with the Alcoa Plan on December 31, 2001, over three years before

5 - FINDINGS AND RECOMMENDATIONS

Shattuck's claim for benefits was denied.  Accordingly, this court looks to the Alcoa Plan to determine the standard of review.

Except for duties performed by the Plan Administrator, Section 11.2 of the Alcoa Plan gives a Benefits Management Committee ("Committee") "complete authority to control and manage the operation and administration of the Plan" and grants the Committee discretionary authority to construe and interpret the Plan.  D 140-42, 337-38.  Because the Alcoa Plan confers discretionary authority on the Committee, a Committee's decision is reviewed under the abuse of discretion standard.

Nevertheless, Shattuck relies on another provision in the Alcoa Plan which states that "a Participant who was covered under a plan which was merged into this Plan will remain eligible to receive a benefit *that is not less than the benefit accrued under such Rule or Plan* . . . provided the eligibility requirements for such [benefit] are met."  D 326 (Alcoa Plan, Section 7.8(c)) (emphasis added).  Shattuck points out that no similar provision was at issue in *Grosz-Salomon* and that this provision entitles him to the more favorable *de novo* standard of review under the RMC Hourly Plan.  However, this provision merely mandates that the Alcoa Plan may not impose more stringent eligibility requirements for accrued benefits; it does not purport to fix the standard of review.  Thus, this court will apply the abuse of discretion standard of review.

Review under the abuse of discretion standard is limited and requires substantial deference to the trustees' decision.  *Jordan*, 370 F3d at 875; *Atwood v. Newmont Gold Co., Inc.*, 45 F3d 1317, 1322-23 (9th Cir 1995).  Trustees abuse their discretion only when they "make a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact."  *Atwood*, 45 F3d at 1323-24, citing *Taft v.*

*Equitable Life Assurance Soc'y*, 9 F3d 1469, 1472-73 (9th Cir 1973).  Where ambiguities in the

terms of the pension plan are at issue, *Firestone* requires the court to give deference to the

trustees.  *Kearney v. Standard Ins. Co.*, 175 F3d 1084, 1089 (9th Cir 1999), citing *Firestone*, 489

US at 115.

   "ERISA plan administrators abuse their discretion if they render decisions without any

explanation, or construe provisions of the plan in a way that conflicts with the plain language of

the plan.'"  *Taft*, 9 F3d at 1472 (9th Cir 1993) (citations omitted).  "When disputes arise, courts

should first look to explicit language of the agreement . . . ."  *Richardson v. Pension Plan of*

*Bethlehem Steel*, 112 F3d 982, 985 (9th Cir 1997).  In determining whether language is

ambiguous, "[w]e interpret terms in ERISA insurance policies in an ordinary and popular sense

as would a person of average intelligence and experience."  *Evans v. Safeco Life Ins. Co.*, 916

F2d 1437, 1441 (9th Cir 1990) (internal quotation and brackets omitted).  "We will not artificially

create ambiguity where none exists."  *Id* (internal quotations and citation omitted).

## II. Interpretation of the RMC Hourly Plan/Alcoa Plan

   The sole question in this case is the effect of other provisions in the RMC Hourly Plan

and Alcoa Plan on eligibility for "55/40" retirement.  Shattuck argues that the "55/40 Retirement

Eligibility" provision applied by its own terms when he reached age 55 because he also:  (1) had

more than 40 but less than 120 quarters of service; and (2) was laid off as a result of a permanent

shutdown of the Troutdale plant.  Based on a plain reading of this provision, he contends that he

was entitled to early retirement once he attained the age of 55.

   As mandated by Section 7.8(c) of the Alcoa Plan, defendant agrees that as a participant in

the RMC Hourly Plan, Shattuck is eligible to receive the "55/40" retirement benefit under the

terms of the RMC Hourly Plan if he had reached the age of 55 and (a) had been laid off as a result of a permanent shutdown of a plant or (b) had been absent from work continuously because of a layoff for a period of three years.  However, defendant parts ways with Shattuck with respect to when the determination of eligibility for a pension benefit must be calculated.

Defendant maintains that it did not abuse its discretion by reading the "55/40 Retirement Eligibility" provision with reference to other provisions in the relevant plans which change an employee's status.  Read together, the "55/40" retirement benefits are not available to Shattuck because he either experienced a "break in service" (under the RMC Hourly Plan) or a "Severance" (under the Alcoa Plan) two years after his layoff and before reaching age 55.

Both the RMC Hourly Plan and the Alcoa Plan include provisions identifying when a participant experiences a change in status following a layoff.  The Alcoa Plan states that "[i]f a participant of this Plan elects to retire under a previously available retirement type as provided in subsections (a), (b), (c) or (d), the amount of such Participant's Pension will be:  (i) the Accrued Benefit determined under the Rule the Participant is covered under as of his or her Severance Date. . . ."  D 279, 326 (Alcoa Plan, Section 7.8(e)).  Subsection (a) refers to a benefit previously available in a plan which was merged into the Alcoa Plan (including the RMC Hourly Plan).  *Id*. Thus, if a participant experiences a "Severance Date" under the Alcoa Plan which terminates his or her pension service, then the participant's eligibility for any benefit formerly available under a merged plan must be determined at that time.  As a result, if Shattuck experienced a "Severance Date" under the Alcoa Plan, then his eligibility for the "55/40" retirement benefit under the RMC Hourly Plan must be determined as of the "Severance Date."

Under the Alcoa Plan, a "Layoff" is defined as ending "on the earlier of the day prior to the effective date of a recall or the date the Participant incurs a Severance Date."  D 108, 298 (Alcoa Plan, Article 2).  A "Severance Date" is defined as the earlier of:

> (a) the date the Participant quits, retires, is discharged, or dies;
> (b) *the second anniversary of the date a Participant has a Layoff;*
> (c) the first anniversary of the date a Participant is first absent (with or without pay) for reasons other than those reasons in (a) or (b) above;
> (d) the second anniversary of the date a Participant is first absent (without or without pay) due to sickness, accident, or non-occupational related disability as terminated by a physician appointed by the Plan Administrator, or Maternity or Paternity Leave.

D 111, 301 (Alcoa Plan, Article 2) (emphasis added).

Similarly, the RMC Hourly Plan provides that a participant's "eligibility for and the amount of his or her pension are determined upon termination of pension service."  D 49, 86 (RMC Hourly Plan, Section VI(A)(6)).  It further provides that an employee "shall be deemed to have a break in service" for various reasons, including an "[a]bsence due to a layoff . . . which continues for more than two (2) years . . . ."  D 45, 85 (RMC Hourly Plan, Section VI(A)(2)).

In short, under both the RMC Hourly Plan and the Alcoa Plan, a  participant who is laid off experiences a "Severance Date" (under the Alcoa Plan) or a "break in service" (under the RMC Hourly Plan) after two years in layoff status.  Also, under both plans, that "Severance Date" or "break in service" triggers termination of the participant's employment with the company for pension benefit purposes.  Accordingly, his or her eligibility for pension benefits, if any, must be determined at that time.

Shattuck was laid off by Reynolds on September 30, 2000, and never recalled.  Thus, he suffered a "Severance Date" under the Alcoa Plan and a "break in service" under the RMC

Hourly Plan two years later on September 30, 2002.  Under either plan, it is that date when his eligibility for pension benefits is determined.  On that date, he was not yet age 55.

Both the RMC Hourly Plan and the Alcoa Plan provide a two year "service grow" period of two years.  The Alcoa Plan also contains certain "age grow" and "service grow" periods, which extend the pension benefits determination by, at most, three years.  However, those provisions do not assist Shattuck.  Under any calculation, Shattuck simply did not attain age 55 before experiencing a "Severance Date" or "break in service" which triggered the termination of his pension service and required that his eligibility for pension benefits be determined under either Section VI(A)(6) of the RMC Hourly Plan or Section 7.8(e) of the Alcoa Plan.

Section VI(6) in the RMC Hourly Plan for determining eligibility for pension benefits contains a qualification that it is "[s]ubject to the provisions hereinbefore contained in this Section VI, and except as specifically provided otherwise herein."  Shattuck argues that the "55/40 Retirement Eligibility" should be read as an exception to Section VI(A)(6).  However, the "55/40 Retirement Eligibility" provision is not an exception to or even inconsistent with Section VI(A)(6), but simply states *whether* a participant is eligible for early retirement benefits at the time eligibility is determined.  Section VI(A)(6) specifies *when* to determine that eligibility, namely "upon termination of service."

///

This court finds that defendant did not abuse its discretion by reading the "55/40 Retirement Eligibility" provision together with the other provisions in the plans governing eligibility for retirement benefits.  Even if this court applied the *de novo* standard of review urged by Shattuck, it would reach the same result.

## RECOMMENDATIONS

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (docket #16) should be DENIED; defendant's Motion for Summary Judgment (docket #20) should be GRANTED; and judgment should be entered in favor of defendant.

## SCHEDULING ORDER

Objections to these Findings and Recommendations, if any, are due **January 9, 2008**. If no objections are filed, then the Findings and Recommendations will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will be referred to a district judge and go under advisement.

DATED this 17th day of December, 2007.


/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

11 - FINDINGS AND RECOMMENDATIONS